IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ESTELLA CURRY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION: 1:20-cv-591-TFM-MU |
| | ) | |
| DEIDRA WRIGHT, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## **REPORT AND RECOMMENDATION**

This case arises from a two-car crash on Interstate 65 in Escambia County, Alabama. One of the drivers of those two cars, Richard Walker, tragically died in the accident. The other driver, Estella Curry, survived the crash—and then an Escambia County jury convicted her of reckless murder. The trial judge in that case sentenced her to life in prison. Curry spent several years after her trial appealing to the Alabama courts to overturn her conviction, but her efforts failed. Curry now asks this Court for federal habeas relief from her conviction pursuant to 28 U.S.C. § 2254.

The District Judge assigned to Curry's case referred her habeas petition to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Rule 72 of the Federal Rules of Civil Procedure, and General Local Rule 72(a)(2)(R). The undersigned has carefully reviewed the record, Curry's petition, Respondent's answer, and all other documents and exhibits filed in this matter and recommends that Curry's petition be denied, without an evidentiary hearing, for the reasons explained below. The undersigned recommends further that Curry be granted a

certificate of appealability on the limited issues set out in Section III of this Report and Recommendation.

## I. SUMMARY OF FACTS AND RELEVANT PROCEDURAL HISTORY[1]

On May 7, 2014, Richard Walker was driving his Toyota Tacoma 4x4 pickup truck northbound on I-65 in Escambia County, Alabama toward his home in nearby Covington County. As Walker drove past mile marker 63, a white BMW sedan rapidly approached his vehicle from behind and crashed into him. The force of the collision caused Walker's truck to flip end-over-end, ejecting Walker from the vehicle and tragically killing him. Estella Curry was driving the BMW. She survived the crash.

An Escambia County grand jury indicted Curry for reckless murder pursuant to Alabama Code § 13A-6-2 on October 31, 2014. (Doc. 12-1, p. 2). More than three years passed from the date of the crash until Curry went to trial. Early on, the delays were largely attributable to Curry's own failure to appear for arraignment, her first attorney's withdrawal from the case, her subsequent rejection of a public defender, and her request that arraignment be postponed so she could attend to certain medical needs and retain new legal counsel. (Doc. 12-1, pp. 2-3, 22-23, 25). The remaining delays were caused mainly by two issues: Curry's mental competence to stand trial and her difficulties getting and keeping defense counsel.

---

[1] This factual summary was developed using the state court record and the Alabama Court of Criminal Appeals opinion on Curry's direct appeal from her conviction. (*See* Doc. 12-10, *Curry v. Alabama*, No. CR-16-1197 (Ala. Crim. App. Aug. 3, 2018)). The factual findings from the ACCA are presumed correct unless Curry rebuts that presumption by clear and convincing evidence, which Curry has not done. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003) (noting that factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary).

Curry's challenges with her legal counsel began almost immediately after her criminal proceedings did. Initially, Curry retained an attorney named Everette Price to represent her. But Attorney Price withdrew in the early stages of Curry's case for reasons that are not clear from the state court record.[2] (Doc. 12-1, pp. 25, 36). After Attorney Price withdrew, the trial judge tried to appoint another attorney, Wade Hartley, to represent Curry. However, according to state court records, Curry rejected Attorney Hartley or *any* court-appointed counsel and requested time to retain new counsel for herself.[3] (Doc. 12-1, p. 3). After Curry rejected Attorney Hartley, she retained her third attorney, Dwayne Brown. Attorney Brown entered an appearance in July 2015, almost ten months after Curry's initial arrest. (Doc. 12-1, pp. 4, 23). After Attorney Brown appeared, the trial court reset Curry's case for arraignment. Curry entered a "not guilty" plea, and the parties began discovery and trial preparations. (Doc. 12-1, pp. 4-8, 23).

Trial preparation came to a halt in late February 2016 when Attorney Brown filed a motion to continue Curry's trial on the grounds that "a serious question has arisen regarding whether Defendant Curry lacks sufficient present ability to assist in her defense by consulting with undersigned counsel with a reasonable degree of rational understanding of the facts and legal proceedings against her." (Doc. 12-1, p. 93).

---

[2] Curry notes briefly in her habeas petition that Attorney Price withdrew "due to health reasons," but the record is otherwise silent as to the cause of Attorney Price's withdrawal. (Doc. 1-1, p. 9).

[3] Attorney Hartley might have verbally declined to take Curry's case, according to some pretrial commentary from the trial judge. (Doc. 12-2, p. 117). Regardless of whether Attorney Hartley declined Curry's case, or whether Curry herself rejected Attorney Hartley, the record is clear that Curry refused to accept a public defender at this stage of her criminal proceedings. (Doc. 12-1, p. 46 (note from Curry indicating "I do not want a public defender")).

Attorney Brown reported that Curry was unable to remember any facts surrounding her involvement in the crash and informed the trial court that he was "seriously considering" filing a motion for mental examination to determine whether Curry was competent to stand trial. In addition to raising potential issues about Curry's competence, Attorney Brown said he needed additional time to complete his forensic inquiry into the crash and additional time to retain experts, an issue he had been "attempting to explain to [Curry]." (Doc. 12-2, p. 93). The very next day, Attorney Brown filed his motion requesting a court-ordered mental examination to determine whether Curry was competent to stand trial. (Doc. 12-1, pp. 95-96).

The trial judge granted both motions just three days after they were filed. He ordered that Curry be examined by a forensic examiner appointed by the Alabama Department of Mental Health and that the examiner provide a written report detailing, among other things, Curry's ability to understand the nature of the proceedings against her and her ability to reasonably assist her attorney in her defense. (Doc. 12-1, pp. 97-98). The trial judge also continued Curry's trial to the June 2016 term. (Doc. 12-1, p. 99).

Immediately thereafter, Curry filed a *pro se* motion asking the trial court to remove Attorney Brown from her case "for being unavailable to provide legal counsel" and for failing to protect her "constitutional, *Brady*, HIPAA, and other rights." (Doc. 12-1, p. 100). Curry told the trial judge she had only seen Attorney Brown "once to sign a form and once to request more info" and that she had not seen him otherwise to prepare her defense. In addition to asking for Attorney Brown's removal, Curry asked the trial court to continue her case, except as to the limited issues of her request for bond

reinstatement/reduction and "FTA [failure to appear] hearings." (Id.) Curry also asked the court to "order [Brown] to provide legal documents and notes, invoice[s], any motions or other instruments, [and] depositions" that pertained to her case. (Id.)

The trial court set a hearing on Curry's motion to remove Attorney Brown for April 5, 2016, but the hearing was continued to May 3, 2016, and again to May 31, 2016, all at Attorney Brown's requests. (Doc. 12-1, pp. 10, 103, 106, 109-10). In the meantime, Curry continued to oppose Attorney Brown's further involvement in her case. She filed a second *pro se* motion asking for an update on her request to terminate Attorney Brown and again requesting copies of various court records and the discovery materials in her case. (Doc. 12-1, p. 107). The trial judge construed Curry's motion as a "Motion for Production of Records" which he promptly denied because Curry was "represented by counsel" and was "not entitled to hybrid representation." (Doc. 12-1, p. 108).

During this time, Dr. Karl Kirkland, the mental health professional who evaluated Curry pursuant to the trial court's earlier order, filed his report. (Doc. 12-1, pp. 111-116). Dr. Kirkland reported that Curry had refused to participate meaningfully in the examination, which she believed her attorney had requested because he was "working for her enemies." In Dr. Kirkland's view, Curry exhibited "guardedness and paranoia … that was pervasive to the point of being delusional." He described her as "angry that the evaluation had been ordered" and "very frustrated with her attorney to the point that [the psychologist was] unsure if [Attorney Brown could] viably go forward with the case." (Id. at 112-13). Despite these issues, Dr. Kirkland reported Curry to be "clearly articulate, intelligent, and capable of reasoning within … a very elaborate, well-constructed delusional disorder." (Id. at 113-14). Dr. Kirkland said Curry's cognitive knowledge about

the trial process was "actually above average" and that Curry understood the charges against her and the penalty for those charges. (Id. at 115). Overall, in Dr. Kirkland's view, Curry appeared "very much qualified to proceed from a cognitive point of view." (Id.).

Curry's cognitive ability was not the problem in Dr. Kirkland's mind though—there was no question Curry *understood* the charges against her and the trial process. Rather, the issue was whether Curry could assist Attorney Brown—or any other attorney—in her defense because of her paranoia and delusions. (Id.). Dr. Kirkland recommended the trial court hold a hearing to evaluate options for further addressing Curry's competency challenges. (Id.). Dr. Kirkland also advised that any attempt by Curry to represent herself "would certainly not be a competent decision on her part." (Id.).

On May 31, 2016, the trial judge denied Curry's request to reinstate her bond, denied her request to remove Attorney Brown, and denied her request to continue the case. (Doc. 12-1, pp. 10, 117-18). Curry continued to protest. A few days later, she filed another *pro se* motion asking for Attorney Brown to be removed, claiming he had, among other things, failed to file necessary pretrial motions, failed to "prepare, protect and defend" her various "rights," and failed to "uphold his duty to the judiciary process." (Doc. 12-1, p. 119-20). She also challenged the medical care she was receiving at the state institution where she was being held, complained about the ongoing delays of her court proceedings, and demanded immediate release from Alabama custody. (Id.). Curry requested—yet again—copies of her court records, this time so she could "proceed with needed civil action." (Id.). Two days later, Curry filed yet another *pro se*

motion asking for dismissal of the charges against her or, alternatively, a change of venue due to what she perceived as bias on the part of the trial judge. (Doc. 12-1, p. 121).

While Curry's new *pro se* motions were still pending, Attorney Brown filed his own motion asking the trial court to continue Curry's trial again and to commit her based on "mental disease and defect." (Doc. 12-1, p. 122-24). Attorney Brown reiterated how he had made several in-person visits with Curry to prepare her case for trial and how it became apparent to him that Curry "might be suffering from mental health issues" and was "unable to explain and assist in the factual development of her case." (Id.). Citing Dr. Kirkland's report, Attorney Brown asked the trial court to commit Curry and continue her trial until she could be reevaluated to determine her ability to assist in the trial of her case. (Id.). The trial judge continued Curry's trial to September 2016. (Doc. 12-1, p. 11).

Curry's ongoing conflict with Attorney Brown came to a head as Curry's trial date approached, and Attorney Brown finally moved to withdraw from the case. (Doc. 12-1, p. 131-32). According to Attorney Brown, Curry's sister had terminated his services because Curry and her family were unsatisfied with his representation. While Attorney Brown disagreed with Curry's view of the quality of his legal representation, he nevertheless agreed that he should withdraw from the case because Curry's mental health challenges had "substantially undermined [his] ability to effectively prepare her case for final adjudication." (Doc. 12-1, p. 131). He said his professional working relationship with Curry and her family was "irreparably damaged to the extent that [he could] no longer zealously represent Defendant Curry in said case." (Id.). The trial judge

granted Attorney Brown's motion to withdraw on August 9, 2016, and simultaneously appointed another attorney, Shane Cooper, to represent Curry. (Doc. 12-1, p. 133).

Curry instantly had issues with Attorney Cooper. She accused the trial court of appointing Attorney Cooper in "a secret hearing [that violated] her constitutional, civil, procedural, and/or substantive rights" and alleged that the "deliberate indifferences of white men" were precluding her from receiving effective assistance of counsel. (Doc. 12-1, pp. 141-148). Like she had with Attorney Brown, Curry was convinced Attorney Cooper was "acting on behalf of the court" and was not defending her "rights." (Doc. 12-1, pp. 139-40). She attacked Attorney Cooper, not only for what she saw as a lack of communication, but also for his physical appearance and speech, going so far as to accuse him of being under the influence of "an undisclosed substance." (Id. at 139-40). Curry repeatedly insisted she wanted Attorney Cooper removed from her case, claiming she was being denied the right to "counsel of choice" and "the production of records." (Doc. 12-1, p. 141).

In all, from November 2016 through January 2017, Curry sent six different *pro se* motions to the trial court attacking Attorney Brown, Attorney Cooper, the trial judge, prison staff, and others, alleging a litany of constitutional wrongs ranging from ineffective assistance of counsel to false imprisonment and torture. (Doc. 12-1, pp. 139-40, 141-48, 149-51, 152-53, 154-56, 157-64). The Escambia County Clerk of Court rejected Curry's *pro se* motions, citing the trial judge's prior ruling that Curry was not entitled to "hybrid representation" and that Curry's attorney of record—and not Curry herself—should file motions with the court when needed. (Doc. 12-1, p. 165).

In late January 2017, the trial judge entered two short orders denying Curry's efforts to remove Attorney Cooper from the case and setting trial to begin in early June. (Doc. 12-1, pp. 166, 167). The week prior to trial, Curry resumed her *pro se* efforts to influence the proceedings. She filed two motions seeking a venue change and recusal of the trial judge. (Doc. 12-1, pp. 168, 171-72).  In swift response, the trial judge ordered, like he had before, that he would not consider Curry's *pro se* motions on the merits because she was represented by counsel. (Doc. 12-1, pp. 169, 173). Curry also filed yet another motion seeking removal of Attorney Cooper, which does not appear to have been ruled upon prior to trial. (Doc. 12-1, p. 170).

Early in the morning of June 12, 2017, the first scheduled day of trial, Attorney Cooper filed a renewed motion asking for Curry to be professionally evaluated to determine her competence to stand trial. (Doc. 12-1, pp. 180-82). Like Attorney Brown had done more than a year earlier, Attorney Cooper questioned Curry's ability to assist in her defense. (Id.). He described Curry as "uncooperative" and "highly suspicious of [him] as an attorney," said she "berates [him] at every meeting," and reported that she "appears to be detached from reality." (Id.).

The trial judge heard argument on Attorney Cooper's motion as the first order of business that morning. (Doc. 12-2, pp. 109-160). He emphasized the belated timing of the motion, noting that Curry's case had been pending for three years, that two pretrial conferences had occurred where everyone had agreed the case was ready for trial, and that he was "most concerned about getting this case to trial and to do so in a timely fashion." (Id. at 109). Attorney Cooper explained that he had been working to defend Curry "as if Dr. Kirkland's report [about Curry's paranoia and delusions] wasn't true" but

that "it's impossible because I keep running into the same wall…." (Doc. 12-2, pp. 110-11). He said Curry did not understand trial procedures or the potential consequences of a trial, nor could she understand or cooperate in plea negotiations. Attorney Cooper told the trial judge Curry was demanding to represent herself, a decision he felt she was not competent to make. (Id. at 111).

On the morning of trial, the State of Alabama presented an entirely different view of Curry, accusing her of being "calculated" and "play[ing] games ever since the beginning of this case." The prosecutor told the judge:

> Every time her case comes up for a hearing, we get a faxed copy of a motion to continue. A very well drafted motion to continue where she lists out different legal aspects of her case in her motion to continue. And she's done that twice. And she'll wait until the day before the hearing to file that. They're very well constructed motions, they're very well written, they're concise language. She uses legal terms. She knows the players in the courtroom.
>
> And Dr. Kirkland says she, basically refused to cooperate with him. So she's refused to cooperate with every attorney in this case, has been a willful choice of hers not to cooperate.
>
> She comes to court in this wheelchair. She doesn't need a wheelchair when she's in the jail. They've got her on video walking around in the jail. So she's calculated. That's our position …

(Doc. 12-2, pp. 112-13). Given Curry's history of what the State saw as gamesmanship, the State maintained that Curry was fully competent to proceed to trial.

After hearing from Attorney Cooper and the State, the trial judge focused on Dr. Kirkland's competency report, emphasizing Dr. Kirkland's opinion that Curry was "very much qualified to proceed from a cognitive point of view." (Doc. 12-2, p. 115). He then addressed Curry directly, asking whether she wished to represent herself. Curry indicated she did because of the "history of the attorneys…in the area" and "the

conditions in this particular area." (Doc. 12-2, pp. 115-16). The trial judge went through Curry's problems with every attorney who had represented her, which Curry steadfastly attributed to the attorneys' conduct and not her own. Curry accused Attorney Cooper of not communicating with her, and Attorney Cooper acknowledged he and Curry had "never once had a conversation about the facts of this case." (Doc. 12-2, p. 119). When the trial judge pressed Curry about whether she wanted to be her "own lawyer in a murder trial," she responded only that she wanted Attorney Cooper removed. (Doc. 12-2, p. 116). Without ever suggesting she wanted to represent herself, Curry said she "wanted to go through a vetting process." (Doc. 12-2, p. 122). And again, when the judge asked Curry about how she wished for the case to proceed, she said only that she wanted Attorney Cooper removed from her case and suggested that she would go through a "vetting process" to find a fifth attorney. (Doc. 12-2, p. 123).

After all the back-and-forth discussion about Curry's desire to remove Attorney Cooper and go through a "vetting process" to select yet another new attorney, the trial judge concluded:

> THE COURT: I want the record to reflect, Ms. Curry, you are extremely articulate, you are very intelligent, you're talking about constitutional rights. It's obvious that you have a grasp of the charges that are against you. You understand what this whole process is about. And she's shaking her head yes.
>
> DEFENDANT: Yes.
>
> THE COURT:  And the Court is satisfied that you are competent to stand trial. And, therefore, I am not going to postpone this trial. We will proceed to trial and we will begin with jury selection a little later this afternoon.

(Doc. 12-2, p. 124).

Attorney Cooper continued to argue that, if the trial court found Curry competent, she should be permitted to represent herself. He "join[ed] in her motion to disqualify [him] as an attorney" in her case. (Doc. 12-2, p. 125). The record reflects that the trial judge made several more efforts to clarify with Curry what course of action she desired from the trial court. (Doc. 12-2, p. 128-132). Finally, the trial judge went through a colloquy with Curry about her desire to represent herself, specifically cautioning Curry about the risks of representing herself. (Doc. 12-2, pp. 137-147). Curry still never unequivocally said she wanted to represent herself; instead, Curry argued that she needed access to materials and additional time "to make an informed and intelligent decision." (Doc. 12-2, p. 148). In the end, the trial court concluded that Curry was "telling [the judge] today that you don't know whether you want a lawyer or not. That you can't make that decision." (Doc. 12-2, p. 154-55). The judge said "…at this point in time, I am not ruling that you can't represent yourself" and instructed the parties to prepare for trial to begin the following morning "unless I hear otherwise." (Doc. 12-2, p. 158). Attorney Cooper filed a renewed motion to withdraw later that evening. (Doc. 12-1, pp. 183-84).

Curry's case proceeded to trial the following morning. (Doc. 12-2, p. 160). The transcript does not reflect that any further discussion occurred regarding Attorney Cooper's request to withdraw or Curry's pending request to represent herself.

At trial, the State presented testimony from seven witnesses, including an eyewitness to Curry's crash with Walker, law enforcement and hospital personnel who interacted with Curry after the accident, and experts in accident reconstruction and toxicology. This testimony showed that Curry's vehicle approached Walker's truck

"really fast," that she never braked or took any other action to avoid the collision, and that she had most likely been driving somewhere between 112 mph and 128 mph, well in excess of the posted speed limit, when she crashed into Walker. (Doc. 12-3, pp. 111-114; Doc. 12-4, pp. 3, 74, 76-77).

The State also presented evidence that Curry behaved unusually after the crash. Witnesses testified that Curry "wasn't making any sense" after the accident and that she claimed, "God told her to do it." (Doc. 12-3, pp. 111-114; Doc. 12-4, pp. 3, 74, 76-77). When Curry was evaluated at a nearby hospital after the wreck, she reportedly was uncooperative with hospital staff, with one witness describing Curry as "aggressive" at times. (Doc. 12-3, pp. 111-114; Doc. 12-4, pp. 3, 74, 76-77). Curry refused to provide her medical history or other information needed for the hospital's initial assessment, and she refused to comply with the hospital staff's request for a urine sample, reportedly flushing the sample down the toilet instead of giving it to hospital personnel. (Doc. 12-4, p. 115). Curry ultimately was catheterized so the hospital could obtain a urine sample from her and test it. Hospital staff also drew Curry's blood and sent it to a State lab to be tested. (Doc. 12-4, pp. 109, 114-18).

The State's evidence revealed that Curry's urine and blood tested positive for several medications. Her urine sample, which was subjected to a rapid drug screen, tested positive for opiates and tricyclic antidepressants. (Doc. 12-4, p. 116). Her blood sample, which was subjected to more rigorous testing at the State's toxicology lab, was negative for opiates but positive for the following drugs, none of which Curry disputes:

- Amitriptyline/nortriptyline (a prescribed antidepressant)

- Cyclobenzaprine (a prescribed muscle relaxer)

- Dicyclomine (a prescribed medication to treat irritable bowel syndrome)

- Diphenhydramine (an over-the-counter medication commonly used as an antihistamine or sleep aid)

(*See* Doc. 1-1, p. 11; Doc. 12-4, p. 171). The State's toxicology expert testified that one or more of these drugs could cause dizziness, drowsiness, confusion, or similar side effects, and that they came with warnings against operating motor vehicles. (Doc. 12-4, pp. 159-163). He also testified that mixing these substances could have a greater negative effect on a person's driving abilities and that, given the drugs in Curry's system, the chances that Curry was impaired at the time of the collision was "much more likely than not." (Doc. 12-4, pp. 156-64).

In response to the State's case, the defense called only one witness—Nicholas Beasley. Beasley was an employee of the Escambia County Emergency Communication District who testified simply that he did not recall any 911 calls about Curry or anyone else driving recklessly in the area around the time of Curry's crash with Walker. (Doc. 12-4, pp. 180-82). The defense did not call any other fact witnesses or present any expert witnesses to rebut the State's evidence about Curry's potential intoxication or her speed at the time of the crash. Curry did not testify.

The jury found Curry guilty of reckless murder, and the judge sentenced her to life in prison. (Doc. 12-5, pp. 21, 171). Curry appealed to the Alabama appellate courts, but she was unsuccessful. She also sought postconviction relief pursuant to Alabama Rule of Criminal Procedure 32, but those efforts failed too. She now comes to this Court seeking habeas relief pursuant to 28 U.S.C. § 2254.

## II. ANALYSIS

Before delving into Curry's precise habeas claims, it is critical to remember the role of district courts in habeas cases, including the limitations placed on their authority. 28 U.S.C. § 2254 says that a district court may grant habeas relief "*only* on the ground that [a prisoner] is in custody in violation of the Constitution or laws or treaties of the United States." (emphasis added). The Supreme Court has cautioned that the writ of habeas corpus is "an 'extraordinary remedy' that guards only against 'extreme malfunctions in the state criminal justice system.'" *Shinn v. Ramirez*, 596 U.S. 366, 377 (2022). That is because criminal law enforcement has traditionally been the States' responsibility, and the States—not the federal judiciary—have primary authority for defining and enforcing their criminal laws and for settling constitutional challenges to state convictions. *Id*. at 376 (citations omitted). Put simply, because "federal habeas review overrides the States' core power to enforce criminal law," its role necessarily is a narrow one. *Id*. at 376-77. This rigorous standard controls the undersigned's analysis of Curry's claims.

To be sure, some of Curry's allegations are unsettling. The record leaves little doubt that Curry suffers from significant physical and mental health challenges, and those problems may very well have played a role in her tragic crash with Richard Walker. Curry's well-documented mental health challenges may also have contributed to her inability or unwillingness to cooperate with her legal counsel.

Curry's allegations that her trial counsel, Attorney Shane Cooper, was underprepared for trial are equally concerning. Particularly bothersome is Attorney Cooper's pretrial acknowledgement that he and Curry "ha[d] never once had a

15

conversation about the facts of this case." (Doc. 12-2, p. 119). The ongoing conflict between Curry and Attorney Cooper is evident from the transcript, which is replete with back-and-forth dialogue between Curry, Attorney Cooper, and the trial judge about Curry and Attorney Cooper's failed efforts to communicate prior to trial to prepare for Curry's defense. (Doc. 12-2, pp. 118-23). And when the trial judge ultimately denied Curry's requests to remove Attorney Cooper and said the trial would begin the following morning, Attorney Cooper responded, "We'll be no more prepared tomorrow." (Doc. 12-2, pp. 158-59).

Curry's Petition and the state court record give rise to other questions too: Why did Attorney Cooper wait until the morning of trial to file a renewed motion for Curry's competence to be evaluated? Could Attorney Cooper have done more to rebut the State's evidence at trial, including pursuing expert testimony to refute the State's evidence about Curry's speed and level of intoxication? Should more issues have been raised on direct appeal or postconviction review? Was the life sentence imposed by the Alabama courts too severe given the circumstances? But these issues are not for this Court to explore in a vacuum. Indeed, the boundaries of habeas review control. This Court's role is to look at the precise claims presented in Curry's Petition and to decide whether those claims have been fairly presented to the Alabama courts and, if so, whether the Alabama courts' adjudication of those claims was contrary to established federal law or were based on an unreasonable determination of fact. 28 U.S.C. §§ 2254(b)(1)(A), (d)(1)-(2). If not, this Court may not grant Curry the habeas relief she seeks, no matter how problematic Curry's allegations are. With this standard in mind, the undersigned turns to Curry's habeas claims.

Curry makes ten distinct claims for relief:

**Claim 1:**  That her trial and sentencing counsel were constitutionally ineffective for failing to investigate and present mitigating and exculpatory evidence at trial and sentencing, including evidence of Curry's military service and medical conditions.

**Claim 2:**  That her trial counsel was constitutionally ineffective for failing to use expert witnesses to rebut the State's evidence at trial or present mitigating or exculpatory evidence at all stages of trial.

**Claim 3:**  That her trial counsel was constitutionally ineffective because he failed to effectively cross-examine witnesses, which Curry says denied her of her right to subject the State's case to meaningful adversarial testing.

**Claim 4:** That her appellate and postconviction counsel were constitutionally ineffective because they failed to appeal potentially mitigating and exculpatory constitutional issues or raise them on collateral appeal.

**Claim 5:** That her trial counsel was constitutionally ineffective for failing to object to or challenge the State's improper conduct throughout trial.

**Claim 6:** That she was denied a fair trial and due process because the evidence in her case was insufficient to support the indictment or subsequent conviction for reckless murder.

**Claim 7:**  That she was denied the constitutional right to self-representation.

**Claim 8:** That she was denied the right to a fair trial and to due process because certain exculpatory evidence was not presented to the jury.

**Claim 9:** That she was denied a fair trial and due process because the jury heard statements she says were involuntary and violated *Miranda v. Arizona*, 384 U.S. 436 (1966).

**Claim 10:** That prosecutorial conduct during her grand jury proceeding, trial, and sentencing deprived her of a fair trial and due process.

(Doc. 1-1, pp. 4-5). As explained more fully in this Report and Recommendation, Claims

1-5 and Claims 8-10 fail because they either were not properly exhausted before the

Alabama courts, or the Alabama courts disposed of them on state procedural grounds.

Claims 6 and 7—the only two of Curry's claims not procedurally defaulted—fail on the merits.

## A.  Exhaustion and Procedural Default

Before this Court can consider Curry's habeas claims on the merits, it must resolve two threshold issues. First, the Court must verify that Curry's claims were properly exhausted before the Alabama state courts. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Second, the Court must examine whether Curry's claims have already been rejected by the Alabama state courts on procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). If Curry's claims have not been exhausted, or if they have been dismissed in the Alabama courts on valid procedural grounds, this Court is precluded from reviewing those claims on the merits absent special circumstances. *See Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008) (discussing that procedural default can only be excused by a showing of "cause and prejudice" or the existence of a "fundamental miscarriage of justice").

As described below, Claims 1-5 and Claims 8-10 of Curry's habeas petition fail because they were not properly exhausted before the Alabama courts and any attempt to raise those claims in state court now would be futile. Claims 9 and 10, to the limited extent they were raised before the Alabama courts, are procedurally defaulted because the state court dismissed them on valid state procedural grounds.

### 1.  Claims 1-5 and Claims 8-10 were not exhausted.

Before coming to this federal court seeking habeas relief for alleged constitutional errors, Curry must first have exhausted her claims in state court. To satisfy the exhaustion requirement, Curry must have given the state courts "one full

opportunity to resolve any constitutional issues by invoking one complete round of the

State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. In Alabama,

a "complete round" of the appellate review process includes an appeal to the Alabama

Court of Criminal Appeals ("ACCA"), an application for rehearing in that court, and a

petition for discretionary review in the Supreme Court of Alabama. *Price v. Warden,

Att'y Gen. of Ala.*, 701 F. App'x 748, 749-50 (11th Cir. 2017) (per curiam). If Curry did

not exhaust her claims in state court, and state law would preclude her from doing so

now, her claims are procedurally barred from review in this Court absent extraordinary

circumstances. *Mize*, 532 F.3d at 1190 ("A claim is procedurally defaulted if it has not

been exhausted in state court and would now be barred under state procedural rules.");

*Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994) ("Pursuant to the doctrine of

procedural default, a state prisoner seeking federal habeas corpus relief, who fails to

raise his federal constitution claim in state court, or who attempts to raise it in a manner

not permitted by state procedural rules, is barred from pursuing the same claim in

federal court absent a showing of cause for and actual prejudice from the default.").

Curry did not exhaust Claims 1-5 (collectively alleging ineffective assistance of

counsel) or Claims 8-10 (alleging missing exculpatory evidence, *Miranda* violations, and

prosecutorial misconduct). As explained below, these claims were either (1) never

presented to the Alabama courts at all, or (2) presented in a form that is substantially

different from the form they are presented in this habeas proceeding. Curry's failure to

exhaust these claims in the Alabama courts precludes this Court from reaching the

merits of those claims now absent a showing of cause-and-prejudice or actual

innocence/fundamental miscarriage of justice which, as analyzed below, Curry has not shown.

### a. Claims 1-5 – Ineffective Assistance of Counsel

Claims 1-5 of Curry's habeas petition collectively allege that her trial counsel, sentencing counsel, appellate counsel, and postconviction counsel were *all* constitutionally ineffective. (Doc. 1-1, p. 4). Curry acknowledges these claims were never presented to the Alabama courts in any form—never on direct appeal or in postconviction proceedings—so there is no question they are unexhausted here. (Doc. 1-1, pp. 19-22, 25-26); *Bailey v. Nagle*, 172 F.3d, 1299, 1305 (11th Cir. 1999). Respondent does point out, and the undersigned acknowledges, that Curry did complain tangentially about her counsel's performance in a brief to the Alabama Court of Criminal Appeals during her postconviction proceedings. (Doc. 12, p. 13 n. 3; Doc. 12-17, pp. 25-26.) However, she did so only as part of a broader argument about "manifest injustice," never making a distinct claim for ineffective assistance of counsel or even mentioning *Strickland v. Washington*, 468 U.S. 668 (1984). The Eleventh Circuit has made clear that "…habeas petitioners cannot preserve otherwise unexhausted, specific claims of ineffective assistance merely by arguing that their lawyers were ineffective in a general and unspecified way." *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004). Furthermore, even if Curry's broad statement about her counsel's ineffectiveness was enough initially to raise the issue before the ACCA, Curry never mentioned it again in her application for rehearing to the ACCA or to the Alabama Supreme Court on her petition for writ of certiorari. (Doc. 12-21; Doc. 12-23.) This

provides an additional basis to find that any ineffective assistance of counsel claim is unexhausted.

Moreover, it is clear, under Alabama law, that any future attempts at exhaustion of Curry's ineffective assistance claims would be futile because those claims would be untimely and likely barred as a successive petition. *See* Ala. R. Crim. P. 32.2(c) (setting a one-year limitations period after a certificate of judgment is entered to file a Rule 32 proceeding); Ala. R. Crim. P. 32.2(b) (precluding the filing of "a successive petition on the same or similar grounds on behalf of the same petitioner.").

### b. Claim 8 – Inadequate Presentation of Exculpatory Evidence

Curry's eighth claim for relief alleges she was "denied a fair trial due to inadequate explanation and presentation of exculpatory evidence…." (Doc. 1-1, pp. 5, 39-40). Curiously, Curry never says the trial court *excluded* any of her proposed exculpatory evidence. Instead, she seems simply to reiterate her claim that trial counsel failed to introduce exculpatory evidence, which as discussed above, is unexhausted and procedurally defaulted. To the extent this can be construed as a standalone claim, Curry acknowledges she did not raise the claim on direct appeal or in postconviction proceedings. (Doc. 1-1, pp. 20-21 (outlining the issues raised on direct appeal and postconviction proceedings, none of which include issues about exculpatory evidence)).[4] Accordingly, the claim is unexhausted. And, like Curry's ineffective

---

[4] In her reply brief, Curry newly suggests that she *did* raise this issue in her direct appeal when she challenged the State's proof about whether she was under the influence of a controlled substance at the time of the accident. (Doc. 17, p. 6). The undersigned disagrees. Curry's argument on direct appeal was about the sufficiency of the State's evidence, an issue the undersigned addresses in Section II.B.ii. of this Report and Recommendation.

assistance of counsel claims, this claim would be barred in Alabama state courts now

by Alabama Rules of Criminal Procedure 32.2(b) and (c).

### c. Claim 9 – Improper Introduction of Involuntary Statements

For her ninth claim, Curry contends she was denied a fair trial "due to improper

introduction of involuntary statements in violation of *Miranda v. Arizona*." (Doc. 1-1, pp.

4, 40-41). Curry's claim is far from clear though; she never specifies what "statements"

she thinks should have been excluded, nor does she articulate any specific evidentiary

errors by the trial judge. Instead, she broadly alleges that "her interactions with the

Alabama State Trooper on the side of the highway should not have been admitted"

because she had just been involved in a car accident and might have suffered a

concussion, shock, or some other nonspecific medical event related to her thyroid.

(Doc. 1-1, p. 41). The core of these vague allegations, as best as the undersigned can

tell, is that Curry thinks she should have been given *Miranda* warnings before any law

enforcement personnel spoke with her at the accident scene or later at the hospital.

Curry's *Miranda* claim fails because it was not exhausted before the Alabama

courts either on direct appeal or through postconviction proceedings. For starters, Curry

acknowledges she did not raise any *Miranda* issues on direct appeal. (Doc. 1-1, p. 20-

21). The only other option then was to exhaust the issue during postconviction

proceedings, which the undersigned finds Curry did not do. Although Curry argued in

her Rule 32 petition that her blood and urine test results should have been excluded,

she never challenged how law enforcement interacted with her at the accident scene or

at the hospital, and she never cited to *Miranda* or otherwise claimed she was in custody

when she spoke with law enforcement. (Doc. 12-16, pp. 11-13). In fact, the only federal

cases Curry relied upon were *Missouri v. McNeely*, 569 U.S. 141 (2013), a case about whether a search warrant or consent was needed to withdraw blood from a defendant, and *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261 (1990), a case about whether parents could withdraw life-saving support from their daughter was in a vegetative state. (Id.) These are not *Miranda* cases, and they were not sufficient to put the state court on notice that Curry intended to raise a *Miranda* claim.

Curry's filings before the Alabama Court of Criminal Appeals and the Alabama Supreme Court were similarly absent of any reference to *Miranda*, or any argument that Curry's statements to law enforcement at the scene or at the hospital were obtained from custodial interrogation without proper warnings.  Put simply, although Curry challenged the admissibility of her blood and urine test results in the Alabama courts, she never relied on *Miranda* or advanced the legal theories she presents to this Court now. This means Curry's *Miranda* claim was not properly exhausted, and this Court is precluded from reaching the merits of it here. *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1128-29 (11th Cir. 2022) ("…[T]he claims the prisoner presents to the district court [must] be the *same claims* the prisoner exhausted in the state courts.") (emphasis in original). And because Curry's *Miranda* claim would be barred now by Alabama Rules of Criminal Procedure 32.2(b) and (c), it is procedurally defaulted before this Court.

### d. Claim 10 – Prosecutorial Misconduct

Curry's tenth claim for relief asserts that she was denied a fair trial and due process because of prosecutorial misconduct that occurred throughout her grand jury proceeding, trial, and sentencing hearing. (Doc. 1-1, pp. 4, 42-43). Curry acknowledges this claim, like the others already discussed, was not raised on direct appeal. (Doc. 1-1,

pp. 20-21). Accordingly, unless Curry raised and exhausted the claim during her postconviction proceedings, it is unexhausted here.

In this Petition, Curry bases her prosecutorial misconduct claim on the following alleged conduct from State prosecutors:

- "aggressively and improperly attacking" Curry's family members who testified at the sentencing hearing (Doc. 1-1, pp. 19, 37);

- commenting on Curry's decision to remain silent throughout the criminal proceedings and suggesting that Curry and her family lacked remorse for the accident (Doc. 1-1, pp. 19-20, 42);

- "unfairly and prejudicially invoked Bible verses during closing argument" (Doc. 1-1, p. 37);

- suggesting Curry deserved a longer sentence because she failed to cooperate with the State's prosecution efforts (Doc. 1-1, p. 42).

However, in her state postconviction proceedings, she only alleged that the prosecutor's reading of Bible verses during closing arguments "so infected the trial with unfairness" that her subsequent conviction was obtained without due process. (Doc. 12-16, p. 10; Doc. 12-17, pp. 17-18). In support of this argument, she relied on a single case, *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974), which established the test for whether improper closing remarks by a prosecutor were so unfair as to reach constitutional error. (Id.).

Curry's closing argument claim here is arguably different in that she seems to have abandoned her reliance on *Donnelly* and its pervading unfairness inquiry, and instead, relying on two different federal court cases: *Crane v. Kentucky*, 476 U.S. 683 (1986), a case about whether a trial court violated a defendant's constitutional right to present a complete defense by excluding evidence relating to the voluntariness of his confession, and *Griffin v. California*, 380 U.S. 609 (1965), a case addressing the

propriety of a prosecutor's remarks about a criminal defendant's constitutionally-

protected decision not to testify at trial. (Doc. 1-1, pp. 42-43; Doc. 12-17, pp. 17-18).

While her change in legal theory could be fatal to her due process claim in this Court,

*see Kelley*, 377 F.3d at 1344 ("the prohibition against raising nonexhausted claims in

federal court extends not only to broad legal theories of relief, but also to the specific

assertions of fact that might support relief"), her failure to exhaust this claim by raising

this issue in her application for rehearing before the ACCA or in her petition for writ of

certiorari to the ASC, is fatal. (Doc. 12-21, pp. 1-11; Doc.  12-23, pp. 1-8). *See Price*,

701 F. App'x at 749-50 (exhaustion in Alabama requires an appeal to the Alabama

Court of Criminal Appeals, an application for rehearing in that court, and a petition for

discretionary review in the Alabama Supreme Court).

The undersigned finds that Curry's *present* challenge to the State prosecutor's

conduct at trial and sentencing was never fairly presented to the Alabama courts, and

Curry would be barred by Alabama procedural law from exhausting her claim in state

court now for the same reasons that apply to her other unexhausted claims. Therefore,

this claim is unexhausted and/or procedurally defaulted, and this Court is precluded

from reaching the merits of the claim absent a showing of cause-and-prejudice or a

fundamental miscarriage of justice.

**2. Claims 9 and 10 are procedurally defaulted.**

As noted above, even though Curry never made the same *Miranda* and

prosecutorial misconduct claims in state court that she does here, she *did* otherwise

challenge the admission of her blood and urine test results and the prosecutor's reading

of Bible verses as part of her Rule 32 proceedings. To the extent Curry's Rule 32

allegations might be construed to have exhausted her *Miranda* and prosecutorial misconduct claims in state court, those claims still fail in this federal habeas action because the Alabama courts rejected them under a valid Alabama state procedural rule. Before state prisoners like Curry can present their federal claims in federal court, those prisoners must first seek relief in state court in accordance with established state procedures. *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). When they fail to do so, and the state court dismisses a claim on state procedural grounds, a federal habeas court is generally precluded from reviewing that claim. *Id*. (citing *Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir. 1990)).

Curry did raise *some* evidentiary and prosecutorial misconduct allegations in her Rule 32 proceedings, but the Alabama Court of Criminal Appeals ruled that those issues were precluded from review by Alabama Rule of Criminal Procedure 32.2(a)(5) because they could have been, but were not, raised on direct appeal. (Doc. 12-20, p. 3). The Alabama Supreme Court summarily upheld that ruling when it denied Curry's petition for writ of certiorari without opinion. (Doc. 12-24). These state court findings regarding procedural default are entitled to deference from this Court on habeas review. *Ferguson v. Sec'y, Dep't of Corr.*, 580 F.3d 1183, 1193 (11th Cir. 2009).

The fact that the Alabama courts dismissed Curry's evidentiary and prosecutorial misconduct allegations using a state procedural rule is not dispositive though. For the Alabama courts' decision to bar this Court from separately reviewing the issue, the Alabama courts' procedural ruling must rest upon "independent and adequate" state law grounds. *Boyd v. Comm'r, Ala. Dep't Corr.*, 697 F.3d 1320, 1335 (11th Cir. 2012) (citing

*Coleman*, 501 U.S. at 722). In this circuit, a three-part test determines whether a state court's procedural ruling was an "independent and adequate" state rule of decision:

> First, the last state court rendering a judgment in the case must clearly and expressly say that it is relying on state procedural rules to resolve the federal claim without reaching the merits of the claim. Second, the state court decision must rest solidly on state law grounds, and may not be "intertwined with an interpretation of federal law." Finally, the state procedural rule must be adequate; i.e., it may not be applied in an arbitrary or unprecedented fashion.

*Id*. at 1335-36 (citing *Card v. Dugger*, 911 F.2d 1494 (11th Cir. 1990)).

Applying this three-part test, the undersigned finds that the Alabama courts' dismissal of Curry's claims on procedural grounds constitutes an independent and adequate state rule of decision. First, the ACCA "expressly stated" that Curry's claims were "precluded by Rule 32.2(a)(5) because they could have been, but were not, raised and addressed on direct appeal." (Doc. 12-20, p. 3). Second, there is no indication the ACCA's application of Ala. R. Crim. P. 32.2(a)(5) is "intertwined with an interpretation of federal law." Third, the application of Ala. R. Crim. P. 32.2(a)(5) in Curry's appeal does not appear to have been "applied in an arbitrary or unprecedented fashion," as that rule is regularly applied by the ACCA. *See, e.g., T.C.S. v. State*, Case No. CR-2022-1285, 2023 WL 4144561 at *3 (Ala. Crim. App. June 23, 2023) (affirming petitioner's claim was precluded by Ala. R. Crim. P. 32.2(a)(5)); *Williams v. Gordy*, Case No. 6-16-CV-01009-KOB-HNJ, 2018 WL 5602904, at *6 (N.D. Ala. May 25, 2018), report and recommendation adopted, No. 6-16-CV-01009-KOB-HNJ, 2018 WL 4579866 (N.D. Ala. Sept. 25, 2018) (collecting cases affirming application of Rule 32.2(a)(5)). Furthermore, the Eleventh Circuit has "squarely held that claims barred under Rule 32.2(a)(3) and (a)(5) are procedurally defaulted from habeas review." *Boyd*, 697 F.3d at 1335 (citations

omitted). With all three parts of the test met, the Alabama courts' dismissal of Curry's *Miranda* and prosecutorial misconduct allegations on procedural grounds precludes this Court's habeas review, even if those claims did not already fail due to lack of exhaustion.

### 3. Curry has not established an exception to procedural default.

Having established that Claims 1-5 and Claims 8-10 are procedurally defaulted, the Court must now consider whether either of the two exceptions to procedural default exist here. *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1129 (11th Cir. 2022). The first is the "cause and actual prejudice" exception. *Id.* (citing *Engle v. Isaac*, 456 U.S. 107, 129 (1982)). The second is the "actually innocent" exception, also known as the "fundamental miscarriage of justice exception," which is applicable only in the most extraordinary of circumstances. *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986); *Johnson v. Singletary*, 938 F.2d 1166, 1174–76 (11th Cir. 1991)).

Curry makes two arguments for why her claims should not be procedurally defaulted. First, she says the ineffectiveness of her counsel, and the errors resulting from that ineffectiveness, establish "cause and prejudice" to excuse her procedural default. (Doc. 1-1, pp. 23, 25-26; Doc. 7, pp. 8-10). Second, she argues she is "actually innocent" of reckless murder, the crime for which she was convicted. (Doc. 1-1, pp. 23, 43-46; Doc. 7, pp. 10-22). After a careful review of Curry's arguments and the record in her case, the Court finds that neither exception saves her claims from procedural default.

### a. Cause and Prejudice

To show cause, Curry must demonstrate some factor external to the defense that kept her from raising her claims properly in state court. *Ledford v. Warden, Ga. Diagnostic Prison*, 975 F.3d 1145, 1161 (11th Cir. 2020) (citations omitted). To establish prejudice, Curry must show "that there is at least a reasonable probability that the result of the proceeding would have been different if [she] had been allowed to raise the issue in state court." *Id.* (quoting *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003)).

Curry argues that the deficient performance of her trial, appellate, and postconviction counsel satisfy the "cause" prong of the cause-and-prejudice exception. (Doc. 1-1, pp. 23, 25-26; Doc. 17, pp. 8-10). Curry oversimplifies the issue though. While Curry is correct that counsel's ineffectiveness in failing to preserve a claim *could* constitute cause, it can only do so if the underlying ineffective assistance claim itself has not been procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray*, 477 U.S. at 488-89 (holding that the exhaustion doctrine "generally requires that a claim of ineffective assistance must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."); *Hill v. Jones*, 81 F.3d 1015, 1030 (11th Cir. 1996) (concluding that "procedurally-defaulted claims of ineffective assistance cannot serve as cause to excuse a default of a second claim"). This is a problem for Curry: There is no doubt her underlying ineffective assistance claims have been procedurally defaulted because, as analyzed above, they were never raised in state court, and Curry would be procedurally barred from raising them there now. So, unless she can show separate cause-and-prejudice for why *those* claims were defaulted, she cannot rely on that ineffective assistance to save her habeas claims here. *Edwards*, 529 U.S. at 453.

Curry says *Martinez v. Ryan*, 566 U.S. 1 (2012), excuses the default of her underlying ineffective assistance of counsel claims. (Doc. 1-1, pp. 25-26). In *Martinez*, the Supreme Court established an equitable rule that allows, in narrow circumstances, for inadequate assistance of *postconviction* counsel to provide cause for procedural default of ineffective assistance of *trial* counsel claims. The *Martinez* exception applies where (1) a state requires a prisoner to raise ineffective-trial-counsel claims at an initial-review collateral proceeding; (2) the prisoner failed properly to raise ineffective-trial-counsel claims in his state initial-review collateral proceeding; (3) the prisoner did not have collateral counsel or his counsel was ineffective; and (4) failing to excuse the prisoner's procedural default would cause the prisoner to lose a "substantial" ineffective-trial-counsel claim. *See Arthur v. Thomas*, 739 F.3d 611, 629 (11th Cir. 2014) (citing *Martinez*, 566 U.S. at 13). If these circumstances are present, there may be "cause" to excuse procedural default of an ineffective assistance of trial counsel claim. *Martinez*, 566 U.S. at 15. The Supreme Court has extended the *Martinez* exception to apply in cases where state law technically permits ineffective-trial-counsel claims on direct appeal, but state procedures make it "virtually impossible" to raise ineffective-trial-counsel claims on direct appeal. *See Trevino v. Thaler*, 569 U.S. 413, 429 (2013). Notably, to qualify for the *Martinez* exception, a petitioner must also demonstrate that the underlying ineffective assistance of trial counsel claim is a "substantial one," which means the claim has some merit. *Martinez*, 566 U.S. at 13.

*Martinez* does not save Curry's underlying ineffective assistance of trial counsel claims. As noted above, *Martinez* only applies where state law actually precludes, or makes "virtually impossible," bringing claims of ineffective assistance of trial counsel on

direct appeal. Quite the contrary, Alabama law allows litigants to advance ineffective assistance of counsel claims on direct appeal. *See Williams v. State*, 2017 WL 3976601, at *3 (11th Cir. Aug. 2, 2017) ("Alabama does not bar a prisoner from raising [a claim of ineffective assistance of trial counsel] on direct appeal.... Instead, 'any claim that counsel was ineffective must be raised as soon as practicable, either at trial, on direct appeal, or in the first Rule 32 petition, whichever is applicable'") (quoting Ala. R. Crim. P. 32.2(d)). Because Alabama law allows ineffective assistance claims on direct appeal, *Martinez* and its progeny are inapposite to Curry's claims. The undersigned also finds it noteworthy that Curry was represented by different attorneys on direct appeal and in postconviction proceedings, and neither of those attorneys challenged the effectiveness of her trial counsel.

To summarize, Curry's ineffective assistance of counsel claims were procedurally defaulted in state court, and she has not shown any cause for why they should be spared here. And, without a showing of cause, the Court does not need to address the prejudice inquiry. Curry cannot rely on any alleged ineffective assistance to save her defaulted habeas claims in this case.

### b. Actual Innocence/Fundamental Miscarriage of Justice

Curry alternatively argues that her habeas claims should be spared from procedural default under the "actual innocence/fundamental miscarriage of justice" exception. (Doc. 1-1, pp. 23, 43-46). To qualify for the "actual innocence/fundamental miscarriage of justice" exception, Curry must "show that it is more likely than not that no reasonable juror would have convicted [her] of the underlying offense." *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (internal quotations omitted). To be

credible, "a claim of actual innocence must be based on reliable evidence not presented at trial." *Id.* (quoting *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)). Notably, this exception is "exceedingly narrow in scope." *Johnson*, 256 F.3d at 1171.

Curry fails to meet the heavy burden of establishing her actual innocence. Curry was convicted of reckless murder in violation of Ala. Code § 13A-6-2(a)(2), which reads in pertinent part:

> (a) A person commits the crime of murder if he or she does any of the following:
> …
>
> (2) Under circumstances manifesting extreme indifference to human life, he or she recklessly engages in conduct which creates a grave risk of death to a person other than himself or herself, and thereby causes the death of another person.

Ala. Code § 13A-6-2(a)(2). The Alabama Court of Criminal Appeals has explained the reckless murder statute as follows:

> Section 13A–6–2(a)(2) requires the prosecution to prove conduct which manifests an extreme indifference to human life, and not to a particular person only. Its gravamen is the act of reckless[ness] by engaging in conduct which creates a grave or very great risk of death under circumstances "manifesting extreme indifference to human life." What amounts to "extreme indifference" depends on the circumstances of each case, but some shocking, outrageous, or special heinousness must be shown. A person acts recklessly when he is aware of and consciously disregards a substantial and unjustifiable risk.

*King v. State*, 505 So.2d 403, 407 (Ala. Crim. App. 1987) (internal quotations and citations omitted).

At trial, the State put on evidence that Curry was driving her BMW at a speed that far exceeded the posted speed limit, that Curry drove her car into the back of Richard Walker's truck, and that Mr. Walker died as a result of that collision. One law enforcement witness testified that Curry "wasn't making any sense" at the scene of the

accident, and first responders' records noted that Curry had an "altered mental status." (Doc. 1-1, p. 7). The State also presented evidence, which Curry does not dispute, that she was operating her vehicle after having taken a combination of prescription medications. Testimony from the State's toxicology expert indicated that Curry's blood was drawn approximately two hours after the crash and, when it was tested, was shown to contain multiple different prescription medications in high enough levels that it was more likely than not that Curry was impaired at the time of the crash. (Doc. 1-1, p. 9; Doc. 12-4, p. 164). Based upon this evidence, and the State's other evidence and testimony at trial, the jury convicted Curry of reckless murder in violation of Ala. Code § 13A-6-2(a)(2).

Curry has offered several items of "new evidence" that she says prove she is innocent of reckless murder. The first is a sworn declaration from Dr. Robert Cox, a board-certified toxicologist and Emergency Medicine physician, confirming that, although Curry's urine screen tested positive for opiates after the crash, her blood sample did not. In Dr. Cox's opinion, Curry's positive test for opiates in her urine was either a false positive, or the result of her having taken prescribed codeine a few days before the crash. (Doc. 17-2, p. 13). Dr. Cox's declaration is accompanied by new medical records which Dr. Cox says demonstrate that Curry may have been suffering from "anticholinergic toxicity or syndrome" as a result of her medications at the time of the crash. (Doc. 17, pp. 13-14; Doc. 17-1; Doc. 17-2; Doc. 17-3; Doc. 17-4).

The second piece of "new evidence" Curry offers is a sworn declaration from Mr. Michael Weaver, a forensic scientist with the Alabama Department of Forensic Sciences. (Doc. 17, pp. 15-16; Doc. 17-4). Mr. Weaver testified on behalf of the State at

Curry's trial about the substances found in Curry's blood sample and the potential impact of those substances on Curry's ability to safely drive her car, including his opinion that it was "more likely than not" that Curry was impaired at the time of the crash. (Doc. 12-4, pp. 137-175). The substance of Mr. Weaver's declaration now is that Curry's blood sample did not test positive for opiates (which is the same as he testified at trial), that the State never asked him about the rapid drug screen conducted on Curry's urine sample, and that, if he had been asked, he would have testified that a rapid drug screen is inconclusive, that Curry was not under the influence of opiates at the time of the crash, and that Nurse Qualls, one of the State's other witnesses, was not qualified to testify that Curry was "actually positive for opiates." (Doc. 17-5).

The third item of "new evidence" Curry offers is a sworn declaration from Jim Griffin. (Doc. 17-6). Mr. Griffin is an accident reconstructionist whom Curry offers to challenge the reliability of the State's evidence at trial regarding Curry's speed at the time of the crash. (Doc. 17, pp. 16-17; Doc. 17-6). Mr. Griffin opines that Curry's speed at the time of the crash was approximately 96 to 98 mph, and perhaps as high as 104 mph. (Doc. 29-1, p. 5).

Curry's "new evidence" does not persuade the Court that "no juror, acting reasonably, would have voted to find her guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Despite Curry's insistence that her blood test was negative for opiates or other "controlled substances" and that she may not have known the potential implications of mixing her medications and driving, and despite her challenges to the scientific reliability of the State's evidence about her speed, the record still supports the jury's conviction for

reckless murder. Curry does not – and cannot – dispute that she ingested a combination of medications that impaired her ability to drive safely and that, even according to her own expert's estimations, she was driving close to 100 mph when she struck Mr. Walker. Furthermore, even if Curry's new evidence called into question her level of intoxication or the voluntariness of her intoxication, Curry still would not be "actually innocent" but only perhaps guilty of a lesser degree of crime. *See Howard v. Barrett*, No. 4:12-cv-01845, 2014 WL 4316387 at *11 (N.D. Ala. Aug. 21, 2014). Notably, Curry's jury was instructed regarding manslaughter and voluntary intoxication, but nevertheless elected to convict Curry of reckless murder. (*See* Doc. 12-4, pp. 198-99). It is within the province of the jury, not the Alabama appellate courts or this Court, to determine Curry's culpability level.

It seems that Curry is trying to write a new element into the reckless murder statute. Curry argues:

> According to the new reliable evidence, Ms. Curry can establish that she was not under the influence of a controlled substance to a reasonable degree of medical certainty. **This negates an essential element of the crime she was convicted of.**

(Doc. 17, p. 20) (emphasis added). But being "under the influence of a controlled substance" is not an element of Ala. Code § 13A-6-2(a)(2). Curry does not identify any other element of reckless murder that the State supposedly failed to prove. In any event, the fact that Curry's indictment and the jury instructions referred broadly to "controlled substances" and not more specifically to prescription and nonprescription medications does not justify a finding of "actual innocence" or otherwise warrant habeas relief. The indictment was sufficiently specific to place Curry on notice of the circumstances under which she was being charged with reckless murder, including the

conduct which the State contended manifested extreme indifference to human life as required by Ala. Code § 13A-6-2(a)(2). Further, the instructions the trial judge gave to the jury accurately reflected the law and the facts of the case, even if the trial court could have been clearer about distinguishing between prescription and non-prescription medications and "controlled substances." *See Bass v. Price*, No. CA-10-0446-CB-C, 2011 WL 1790032 (S.D. Ala. Mar. 29, 2011) (analyzing the sufficiency of an indictment and related jury instructions for reckless murder). Finally, it is worth noting that there was evidence at trial that Curry <u>did</u> have opiates in her system, at least in her urine sample, and the jury was entitled to give weight to that evidence. (Doc. 12-4, p. 116; Doc. 12-6, p. 66). And Curry's counsel, through cross-examination of the State's toxicology expert, clearly established Curry's countervailing argument that she did not have opiates in her system. (Doc. 12-4, p. 170). Although Curry now contends the State overemphasized the rapid drug screen results (which showed the presence of opiates) and ignored the blood test results (which showed the absence of opiates), the fact remains that there was sufficient evidence before the jury to sustain Curry's conviction for reckless murder, even in light of her "new evidence."

Accordingly, Curry has not shown cause-and-prejudice or demonstrated her actual innocence in a way that would save Claims 1-5 and Claims 8-10 from procedural default.

**B. Claim 6 and Claim 7 fail on the merits.**

Denial of Claims 1-5 and Claims 8-10, however, does not impact this Court's analysis of Curry's remaining claims—Claim 6 (Insufficiency Claim) and Claim 7 (Self-Representation Claim) on the merits. *See Kelley*, 377 F.3d at 1344-45 (allowing

36

dismissal of a petitioner's unexhausted claims and consideration of the remaining claims on the merits).

### 1. **Standard of Review**

This Court's authority to issue habeas relief is limited by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996. Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) is essentially a bar to relitigation. This section forecloses relief unless the last state-court adjudication on the merits involved an unreasonable application of federal law or was based on an unreasonable determination of fact. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018); *Sears v. Warden GDCP*, 73 F.4th 1269 (11th Cir. July 19, 2023) (quoting *Greene v. Fisher*, 565 U.S. 34, 40 (2011)).

A state court's decision is "contrary to" clearly established law if the state court reached a conclusion opposite to one reached by the Supreme Court on the same question of law, or if the state court arrived at a different result from the Supreme Court on "materially indistinguishable" facts. *Sears*, 73 F.4th at 1279 (citing *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). A state court's decision is an "unreasonable application" of established federal law if the state court

identifies the correct governing legal rule from Supreme Court caselaw but unreasonably applies it to the facts of the case. *Id*. (citation omitted).

As explained below, Court concludes that the Alabama courts' denial of Curry's Insufficiency and Self-Representation Claims was not contrary to or an unreasonable application of established federal law or based on an unreasonable determination of facts.

2. **<u>Analysis of Claim 6 – Insufficiency of the Evidence Claim</u>**

Curry's sixth habeas claim alleges the evidence at trial was constitutionally insufficient to sustain her indictment and conviction of reckless murder. (Doc. 1-1, p. 4). Curry pursued this claim throughout each level of her direct appeal proceedings in state court; therefore, this claim has been properly exhausted as required by 28 U.S.C. § 2254(b).

Before turning to the potential merits of this claim, the Court addresses a threshold issue Respondent raised—whether Curry abandoned her insufficiency claim by not expounding on it in her supporting brief. According to Respondent:

> "Although Curry lists this claim in her initial summary of claims on page four of her petition, she does not mention the claim again and fails to brief the claim in the body of her brief, skipping over the claim and going directly to claim (b.) … Curry thereby abandoned this claim."

(Doc. 12, p. 26 n. 4).

While the Court acknowledges Respondent's position, it is mindful of the Eleventh Circuit's decision in *Clisby v. Jones*, 960 F.2d 925 (11th Cir. 1992), and cases applying *Clisby*, that require district courts to resolve any habeas claims that are presented in clear and simple language. *See also Dupree v. Warden*, 715 F.3d 1295, 1299 (11th Cir. 2013); *Bryant v. Warden*, Case No. 21-13761, 2022 WL 17974493 (Dec.

28, 2022). Curry pursued her insufficiency claim in detail throughout the Alabama courts, and she plainly intended to incorporate it in her habeas filing here. Thus, the Court, acknowledging Curry's *pro se* status, declines to consider the claim abandoned and will analyze it with the same attention given to Curry's other claims.

For Curry to be entitled to habeas relief on her insufficiency claim, this Court must find that the Alabama courts' denial of that claim was either contrary to or an unreasonable application of "clearly established Federal law," or was based on an unreasonable determination of facts in light of the evidence. 28 U.S.C. § 2254(d)(1)-(2). The "clearly established Federal law" relevant to Curry's insufficiency claim comes from *Jackson v. Virginia*, 443 U.S. 307 (1979).

In *Jackson*, the Supreme Court held that, in an appeal challenging the sufficiency of evidence against a defendant, the "critical inquiry" is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 318-19. The *Jackson* court noted further that it is the trier of fact's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts and ultimate facts," and that a reviewing court should not substitute its judgment for that of the trier of fact. (*Id*.).

The Court finds that the Alabama Court of Criminal Appeals applied the correct legal standard from *Jackson* to its review of Curry's insufficiency claim on direct appeal. Specifically, the ACCA recognized that it "must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution." (Doc. 12-10, p. 18). The ACCA

further acknowledged that its role was not to decide the facts of a case, but rather "to judge whether the evidence is legally sufficient to allow submission of an issue for decision to the jury" and to "interfere with the jury's verdict only where it reaches a clear conclusion that the finding and judgment are wrong." (Id.) Although the ACCA never directly cited to *Jackson*, it applied the exact same legal standard. The undersigned does not find that the ACCA's decision was contrary to, or an unreasonable application of *Jackson*.

Nor was the ACCA's rejection of Curry's insufficiency claim based on an unreasonable determination of facts. After acknowledging the legal standard applicable to Curry's insufficiency claim and recounting the testimony and evidence admitted at trial, the ACCA concluded:

> Based on this testimony and evidence presented above, it is clear to this Court that the State provided sufficient evidence from which the jury could reasonably and fairly infer that Curry caused Walker's death after colliding with his vehicle on the interstate at an excessive rate of speed and with opiates and antidepressants in her system. Thus, the evidence presented by the State was sufficient to establish a prima facie case of reckless murder and was sufficient for the jury to find Curry guilty of that offense beyond a reasonable doubt.

(Doc. 12-10, p. 22).

This Court agrees. As discussed throughout this Report and Recommendation, there was sufficient evidence at trial to support the jury's finding that, when Curry's car collided with Walker's truck, Curry was driving at a high rate of speed and had consumed a combination of medications that rendered her unable to operate her vehicle safely. Construing this evidence in the light most favorable to the State, the evidence supports the jury's conclusion that Curry was guilty of reckless murder in violation of Ala. Code § 13A-6-2(a)(2).

Because Curry has failed to show that the Alabama courts' denial of her

insufficiency claim was contrary to, or an unreasonable application of *Jackson* and its

progeny, or that it was based on an unreasonable factual determination, she is not

entitled to habeas relief on this claim.

### 3. <u>Analysis of Claim 7 - Self-Representation Claim</u>

Curry's seventh claim for relief alleges the trial court denied her constitutional

right to self-representation. (Doc. 1-1, p. 4). Curry pursued this claim throughout both

her direct appeal and her postconviction proceedings in Alabama state court, and

therefore, it has been properly exhausted as required by 28 U.S.C. § 2254(b).

When Curry raised her right to self-representation on direct appeal, the ACCA

dismissed the claim on two separate grounds.[5] First, the ACCA ruled that Curry had not

properly preserved the claim for appellate review, concluding:

> [A]lthough there was a lengthy discussion on this issue during a pretrial
> hearing, the court expressly stated during that hearing that it was not
> going to rule on that issue until Curry decided whether she wanted to
> represent herself at trial. Curry, however, never took advantage of that
> opportunity following that hearing and her case proceeded to trial with
> her counsel, Shane Cooper, representing her. **Because Curry never
> reasserted her self-representation claim in the trial court and
> never received an adverse ruling on that issue, it has not been
> preserved for appellate review**.

(Doc. 12-10, p. 15) (emphasis added). Alternatively, the ACCA held that, even if Curry

had properly preserved the issue for appellate review, her claim would fail because she

never "clearly and unequivocally" indicated to the trial judge that she wanted to

---

[5] The highest Alabama court to rule on this issue on the merits was the Alabama
Supreme Court. (Doc. 12-14). However, since the ASC denied review without explaining
its reasons, this Court "looks through" the silent denial to the last reasoned state court
decision, which was the ACCA's order on Curry's direct appeal. (Doc. 12-10); *Wilson v.
Sellers*, 138 S.Ct. 1188, 1192 (2018).

represent herself. (Doc. 12-10, p. 16). This was an adjudication on the merits, so the question before this Court now is whether the Alabama courts' decision was "contrary to" or an "unreasonable application of" established federal law or resulted in a decision that was "based on an unreasonable determination of fact." 28 U.S.C. § 2254(d)(1)-(2); *Harris v. Reed*, 489 U.S. 255, 262-63 (1989) (if a state court reaches the merits of a claim despite a procedural bar, the federal court may address the merits as well); (Doc. 12-20, p. 3 (ACCA opinion on Rule 32 proceedings confirming that Curry's self-representation claim was "rejected by [the ACCA] on the merits")).

The established federal law applicable to this issue is *Faretta v. California*, 422 U.S. 806 (1975), which established that a criminal defendant has a right under the Sixth Amendment to the United States Constitution to represent himself at trial. To invoke the right to self-representation, the defendant must "knowingly and intelligently" waive his right to counsel. *Id.* at 835. He must state his request "clearly and unequivocally, understandable to the trial court by the reasonable person standard." *Stano v. Dugger*, 921 F.2d 1125, 1144 (11th Cir. 1991) (citations omitted). Furthermore, "[e]ven if [a] defendant requests to represent himself, … the right may be waived through defendant's subsequent conduct indicating he is vacillating on the issue or has abandoned his request altogether." *Gill v. Mecusker*, 633 F.3d 1272, 1295 (11th Cir. 2011).

Here the ACCA cited *Faretta* and state law similar to *Faretta* in rejecting Curry's self-representation claim, correctly recognizing that a defendant's request for self-representation must be made knowingly and intelligently and that the request must be clear and unequivocal. (Doc. 12-10, pp. 15-16). Applying this standard, the ACCA

concluded that "Curry never 'clearly and unequivocally' indicated whether she wanted to represent herself." (Doc. 12-10, p. 16). This Court does not find the ACCA's analysis to be contrary to, or an unreasonable application of, *Faretta*, so Curry is not entitled to relief under § 2254(d)(1).

Whether Curry is entitled to relief under § 2254(d)(2) is a closer question. Under 28 U.S.C. § 2254(d)(2), this Court may not grant Curry's application for a writ of habeas corpus unless the Alabama courts' adjudication of her self-representation claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Section 2254(e)(1) mandates that "a determination of a factual issue made by a State court shall be presumed correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The term "unreasonable" is difficult to define, but the Supreme Court has made clear that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "If reasonable minds reviewing the record might disagree about the finding in question on habeas review that does not suffice to supersede the trial court's determination." *Id*. at 301 (internal citations and alterations omitted). This strict standard seemingly precludes habeas relief on Curry's self-representation claim.

The Alabama Court of Criminal Appeals determined that Curry never "clearly and unequivocally" asserted her right to self-representation which, in the ACCA's view, was fatal to her self-representation claim. (Doc. 12-10, pp. 15-16). The record adequately

supports this conclusion, at least enough that "reasonable minds reviewing the record" might agree with it. *Wood*, 558 U.S. at 301. Curry filed at least ten *pro se* motions from the time she was indicted to the week before her trial accusing her attorneys of incompetence and/or blatant wrongdoing, but careful review of those filings and others fails to reveal a single instance where Curry unambiguously said she wanted to represent herself. Instead, Curry's filings launched broadscale attacks on her attorneys, the judge, prosecutors, law enforcement, prison staff, medical personnel, and even the community in Escambia County where her trial was to be held. Although Curry did demand copies of various documents in her case, she never said the documents were needed to prepare for self-representation in her criminal trial, and one filing even indicated she needed the documents to prepare for a *civil* action. Furthermore, Curry repeatedly complained that she was being denied effective assistance of counsel and that her right to "counsel of choice" was being violated, which further supports the notion that Curry desired legal counsel and was not pressing to represent herself. (See Doc. 12-1, pp. 39-44 (requesting a continuance in part to seek new legal counsel); Doc. 12-1, p. 46 (rejecting a public defender); Doc. 12-1, p. 50 (stating that Curry is consulting with "attorneys of her choosing"); Doc. 12-1, p. 100 (asking only for removal of Attorney Brown); Doc. 12-1, p. 107 (seeking "an update on the request for attorney termination"); Doc. 12-1, p. 119 (asking for removal of Attorney Brown and copies of documents to "proceed with needed civil action"); Doc. 12-1, p. 121 (requesting change of venue and dismissal of charges); Doc. 12-1, pp. 139-40 (demanding removal of Attorney Cooper); Doc. 12-1, pp. 141-48 (complaining about Attorneys Brown and Cooper and claiming she was "denied the right to counsel of choice"); Doc. 12-1, pp. 149-51 (attacking

representation by Attorney Brown); Doc. 12-1, pp. 152-53 (demanding removal of Attorney Cooper and dismissal of charges); Doc. 12-1, pp. 154-56 (alleging ineffective assistance of counsel); Doc 12-1, pp. 157-64 (outlining issues with legal counsel and alleging various constitutional violations); Doc. 12-1, p. 168 (requesting venue change); Doc. 12-1, p. 170 ("Motion for Dismissal of Unrequested Court Appointed Attorney")).

It was not until June 8, 2017, a few days before the scheduled start of trial, that Curry filed a motion for recusal of the trial judge and mentioned—for the first time according to the record before this Court—that her right to self-representation was being denied. (Doc. 12-1, pp. 171-72). Notably, this recusal motion still never specifically said Curry wanted to represent herself; rather, her remark about self-representation was buried in a long list of complaints about the trial judge. (Id.) Curry's alleged interest in representing herself became no clearer the morning of trial when Attorney Cooper filed a renewed motion for mental examination stating, in part, "[a]though Defendant has moved to represent herself, and could so move again, she is not competent to represent herself in this matter." (Doc. 12-1, p. 181). According to the record, this was the first time the trial court was made aware of the possibility by anyone that Curry wanted to represent herself, and not just that she was dissatisfied with Attorney Cooper and desired different "counsel of choice."

The trial judge addressed the matter first thing before trial was to begin and, after hearing from Attorney Cooper and the State about the history of Curry's case and her ongoing competence issues, addressed Curry directly about her desire to represent herself:

> **COURT**: … Is that what you're saying, Ms. Curry? You want to be your own lawyer and represent yourself in this trial?

> **DEFENDANT**: Judge Rice, I said that from the beginning. Because of the fact that I have obtained the history of the attorneys, some of the attorneys in this particular area, and the conditions in this particular area. …

(Doc. 12-2, pp. 115-16). And, although this statement sounds equivocal, the discussion that followed between Curry and the trial judge shows that Curry was less than firm about wanting to represent herself. (Doc. 12-2, p. 116 (wanting Attorney Cooper "removed from the case"); Doc. 12-2, p. 122 (wanting to "go through a vetting process"); Doc. 12-2, p. 123 (suggesting a "vetting process"); Doc. 12-2, p. 129 ("whether I'm representing myself or Mr. Cooper is representing me, we're not ready to go to trial"); Doc. 12-2, pp. 130-31 (making self-representation request contingent on more time to prepare for trial); Doc. 12-2, pp. 133-34 (saying she wanted to represent herself but then saying she wanted "liberty in order that I can make an informed decision").

After significant back-and-forth about whether Curry wanted to represent herself or not, the trial judge ultimately held a *Faretta*-type colloquy with Curry.[6] (Doc. 12-2, pp. 136-49). At the end of the colloquy, the trial judge again asked Curry if she wanted to represent herself, and Curry said she "need[ed] time to make an informed and intelligent decision." (Doc 12-2, p. 148-49). After the colloquy, the trial judge remarked:

> THE COURT: Well, she's telling me she doesn't want – she doesn't know whether she wants to represent herself or not. I've gone through a colloquy with her. And she's telling me, well, I'm not sure. Well, she's not formally, then, asking this Court for leave to represent herself. I don't have a formal request from her saying, Judge, I want to be my own lawyer and I will sail this ship myself. And she's not made that formal request to the Court. …

---

[6] When a defendant raises his right to self-representation, a trial court usually will hold a hearing to advise the defendant on the dangers of proceeding *pro se* and, if the defendant still opts to represent himself, the trial court will make a finding that he has chosen to represent himself with adequate knowledge of the potential consequences. *See Nelson v. Alabama*, 292 F.3d 1291 (11th Cir. 2002) (describing *Faretta* hearings).

(Doc. 12-2, pp. 151-52). After more prolonged discussion between Curry and the trial court, the judge ultimately directed the clerk of court to temporarily dismiss the jury panel that had been assembled, rejected Curry's request for Attorney Cooper to be removed, and denied any further continuances of the case. But the issue about Curry's pending request for self-representation was not resolved. The trial court said:

> …But at this point in time, I am not ruling that you can't represent yourself. But at this point in time, what you have told me is that you're trying to decide whether you want to represent yourself. So at this point, we're still full speed ahead, Mr. Cooper. And we look forward to begin the trial tomorrow morning unless I hear otherwise.

(Doc. 12-2, p. 158). Curry even seems to acknowledge that her request remained pending at this point. (Doc. 1-1, p. 14) ("The court ultimately gave Mr. Cooper the night to either 'prepare' or to allow Ms. Curry to again raise her request to represent herself.")

Trial began the following morning, and neither Curry nor Attorney Cooper raised the issue of Curry representing herself. The issue was never raised again throughout Curry's trial. Based on this evidence, in light of the presumption accorded to state court factual findings, the undersigned cannot say that the Alabama courts' adjudication of Curry's self-representation claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d)(2).

To address a related issue that Curry has raised periodically throughout her proceedings, the fact that the trial judge found Curry competent to stand trial does not necessarily mean that she was competent to represent herself. In *Indiana v. Edwards*, 554 U.S. 164 (2008), the Supreme Court ruled that states can insist upon representation by counsel for defendants who are competent enough to stand trial but

who suffer from mental illness to the point that they are not competent to represent themselves. *Edwards* and the state court evidence related to Curry's incompetence further support the trial judge's decision to keep Attorney Cooper on Curry's case over her objection. Both the court-appointed mental health professional and Curry's own trial attorney, along with Curry herself early in the proceedings, told the court that Curry should not represent herself. (*See* Doc. 12-1, p. 39 ("Defendant, Estella Curry, Pro se, does not deny any claims of inability to assist in her criminal legal defense now and in the future…"); Doc. 12-1, p. 50 (Curry writing to the trial judge that she "does not imply [she is] qualified or competent to act as legal representation or serve as an attorney of self in Alabama…"); Doc. 12-1, p. 115 (report from mental health professional stating that Curry should not represent herself); Doc. 12-1, p. 181 (motion from trial attorney indicating that Curry "is not competent to represent herself in this matter). Any argument from Curry that the trial judge necessarily should have let her represent herself just because she was competent to stand trial fails.

Even though the record ultimately supports the Alabama courts' denial of Curry's self-representation claim, there is some question in the undersigned's mind about whether the trial court could have or should have confronted Curry's requests to represent herself sooner. As early as March of 2016, when Curry demanded the removal of Attorney Brown, she asked the court to order Attorney Brown to provide "legal documents and notes, invoice[s], any motions or other instruments, [and] depositions" to her. (Doc. 12-1, p. 100). She reiterated this request a few weeks later, asking additionally for evidentiary materials including video, photographs, *Brady* materials, witness lists, and other materials "mentioned in the discovery material." (Doc.

12-1, p. 107). Over the next several months, Curry continued her efforts to terminate her legal counsel and obtain copies of records. (*See* Doc. 12-1, pp. 141, 152-53). But nothing in the record shows that the trial judge ever treated these motions as requests for self-representation, and the issue seemingly never came to the forefront until the morning of trial—when the trial judge refused a continuance, and it was too late for Curry to have any reasonable chance at representing herself at trial. Forced between representing herself unprepared or proceeding with Attorney Cooper, Curry apparently opted to move forward with Attorney Cooper.

However, Curry never made any effort to develop these facts in her state court proceedings, and even given the confusion surrounding her true desire as to her representation, the Alabama courts' decision was not an *unreasonable* determination of facts under the applicable legal standard. Because Curry cannot show that the Alabama courts' rejection of her self-representation claim is contrary to or represents an unreasonable application of Supreme Court precedent or is based on an unreasonable determination of the facts, habeas corpus relief is precluded.

### III. Certificate of Appealability

If the District Judge adopts this Report and Recommendation and dismisses Curry's habeas claim, the District Judge must also issue or deny Curry a certificate of appealability (COA) as required by Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts. See also 28 U.S.C. § 2253(c)(1)(A) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court.")

When deciding whether to issue a COA, the district court applies different standards depending on whether a habeas claim was dismissed on the merits or on procedural grounds. Where a habeas claim was rejected on the merits, a COA should only issue where the petitioner "demonstrate[s] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)). Where habeas relief is denied on procedural grounds, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added). While "a COA does not require a showing that the appeal will succeed[,]" a prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 337-38 (internal quotation marks omitted).

Considering this legal standard, and for the substantive reasons outlined in this Report and Recommendation, the undersigned finds that it is not beyond debate that Curry was denied a constitutional right. As such, the undersigned **RECOMMENDS** that Curry be granted a Certificate of Appealability on the following issues:

1. Does Curry qualify for the *Martinez* exception to establish cause for the procedural default of her ineffective-assistance-of-trial-counsel claims?

2. Was the Alabama courts' ruling that Curry never made a clear and unequivocal request for self-representation based on an unreasonable determination of facts in light of the evidence?

3. Was Curry's conviction for reckless murder based on insufficient evidence when the indictment and the jury instructions alleged that Curry was under the influence of "controlled substances" at the time of the offense, but the evidence at trial suggested she was under the influence of prescription medications that were not technically "controlled substances"?

### IV. CONCLUSION

As set out above, the undersigned **RECOMMENDS** that Curry's habeas petition be **DENIED** without an evidentiary hearing, that Curry be granted a Certificate of Appealability as to the issues set forth above, and that final judgment be entered accordingly under Federal Rule of Civil Procedure 58.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts; S.D. Ala. Gen LR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in

a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

  **DONE** this the **31st** day of **January, 2024**.

        s/P. BRADLEY MURRAY
        **UNITED STATES MAGISTRATE JUDGE**